United States District Court
Southern District of Texas
**ENTERED**
February 18, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RONALD THOMAS DRAKOS, II, §
(SPN #01715680), §
§
*Plaintiff,* §
§
vs. § CIVIL ACTION NO. H-24-3659
§
CITY OF MEADOWS PLACE, *et al.*, §
§
*Defendants.*

### ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS IN PART, DENYING MOTION FOR DEFAULT AND/OR SUMMARY JUDGMENT, AND ORDER TO SHOW CAUSE

Plaintiff Ronald Thomas Drakos, II, filed a complaint in Texas state court against the City of Meadows Place, the Meadows Place Police Department, Meadows Place Police Commissioner John Doe, Meadows Place Police Chief John Doe, Meadows Place Police Officer Jane Doe, Meadows Place Police Officers John Doe #1 & 2, Meadows Place Police Sergeant William Nix, and Meadows Place Police Officer Byron Jackson.[1] (Dkt. 1-1). Drakos later filed a first supplemental complaint, which raised claims under 42 U.S.C. § 1983 for the first time. (Dkt. 1-5). The City timely removed the action to this Court, (Dkt. 1), and then filed a

---

[1] Drakos refers to this defendant throughout his pleadings as either "Byron Jackson," "Byron Johnson," or "Jyron Jackson." This defendant has never been served in this action, so determining the correct name is not possible from the pleadings. The Court will refer to this defendant as "Jackson" throughout this Order.

motion for judgment on the pleadings. (Dkt. 8). Drakos responded with a motion for default judgment and/or summary judgment against all defendants. (Dkt. 9). Upon removal and at the Court's request, Drakos also filed a more definite statement of his claims. (Dkts. 15, 17).

Having reviewed the parties' motions, all of the pleadings, portions of the state-court records, and the law, the Court grants the City's motion for judgment on the pleadings in part, denies Drakos's motion for default and/or summary judgment, and orders Drakos to show cause why his federal-law claims against the individual defendants in their individual capacities should not be dismissed. The reasons for these rulings are explained below.

## I.    **BACKGROUND**

Drakos has filed voluminous pleadings in both the state court and this Court. However, because the Court is considering a motion for judgment on the pleadings, the Court considers only the facts alleged in the operative pleadings—Drakos's first supplemental complaint and his More Definite Statement.

The incident underlying this action occurred on April 6, 2022, when Drakos parked his rented U-Haul box truck at a fuel island at the Murphy gas station in the City of Meadows Place. (Dkt. 17, pp. 7-9, 19). Drakos was sitting in the driver's seat of the truck when Sergeant Nix approached and knocked on the window. (*Id.* at 7-9, 19). Nix ordered Drakos out of the truck and accused him of being in

2/28

possession of a truck that was reported on "Flock" as stolen.[2]  (Dkts. 1-5, p. 7; 17, p. 9).  Nix and Jackson detained Drakos and radioed the Chief of Police, who allegedly authorized Drakos's arrest based on the Flock hit. (Dkts. 1-5, pp. 4, 7; 17, p. 9).

Drakos alleges that after he was handcuffed, three other City police officers arrived at the scene. (Dkt. 17, p. 10).  One officer used bolt cutters to cut the lock off the rear U-Haul doors, and Nix and Jackson then searched the truck, seizing Drakos's property from inside without a warrant.  (*Id.*).  After the search, Drakos was transported to the Fort Bend County Jail.  (*Id.*).  Publicly available records show that on April 25, 2022, a grand jury indicted Drakos for the offense of unauthorized use of a vehicle.  *See State v. Drakos*, No. 22-DCR-099030 (240th Dist. Ct., Fort Bend County, Tex. Apr. 25, 2022). (*Id.* at 17).

Drakos alleges that the information about the Flock hit was false and that he heard Police Department dispatchers tell Nix that Drakos did not have any "wants and warrants" and that the truck was "cleared" as "not stolen." (*Id.* at 11, 20).

---

[2]Flock Safety manufactures and services automated license plate recognition systems, video surveillance systems, and gunfire locator systems. *See* Flock Safety, https://en/wikipedia.org (visited Feb. 6, 2025). Flock operates its systems under contract with law enforcement agencies, neighborhood associations, and private businesses. *Id.* Generally, Flock cameras scan the license plates of passing vehicles and send the information to a central server, where it is compared to state and local police watchlists of vehicles that have been reported stolen or otherwise used to commit criminal offenses. *Id.* When a match is identified, the information is immediately relayed to nearby officers. *Id.*

Despite this communication, Nix continued to insist that there was a Flock hit for the truck. (Dkt. 1-5, p. 4). Drakos alleges that because there was no valid Flock hit, his arrest and the ensuing search of the truck were illegal. (Dkt. 17, p. 15). He alleges that Nix and Jackson both completed offense reports that falsely stated that there was a Flock hit on the truck to support his arrest and the search. (Dkt. 17-1, p. 12). Drakos alleges that the Chief of Police knew the reports were false, and he conspired with Nix and Jackson to use the false reports to obtain a flawed grand jury indictment against him. (*Id.*).

While he was being held in jail on the charges, Drakos mailed "notices and requests for production of records" to the City, the Police Commissioner, the Chief of Police, and the Mayor. (Dkt. 1-5, p. 4, 9). The "notices" described the allegedly illegal arrest and search and asserted that Nix and Jackson had filed untruthful offense reports. (*Id.* at 5). The requests for production asked for shift logs, incident reports, dispatch transcripts, offense reports, and the Flock teletype, all of which Drakos contended that he needed to prove his innocence in the criminal action. (*Id.*). Drakos alleges that the City, the Police Commissioner, the Chief of Police, and the Mayor ignored these notices and requests for production of documents and chose not to intervene to "end the prosecution." (*Id.* at 5, 7, 9). He alleges that the failure of these City officials to help him constituted malicious prosecution and also aided and abetted Nix and Jackson in the commission of multiple state-law criminal

4/28

offenses. (*Id.* at 9). Ultimately, on January 30, 2023, the state dismissed the charges against Drakos stemming from the April 6 events. (Dkts. 1-5, p. 5; 17, p. 24).

Drakos filed his initial complaint in Texas state court on February 5, 2024. (Dkt. 1-1, p. 13). The initial complaint identified as defendants the Police Chief, Nix, Jackson, the Police Commissioner, the Police Department, Fort Bend County head nurse "Dawn," the Fort Bend County Sheriff, the Fort Bend County Jail, Fort Bend County, and Wellpath Medical Services. (*Id.* at 1). Drakos filed a first amended complaint on May 23, 2024. (Dkt. 1-2). The amended complaint, which by operation of law replaced his original complaint, named the Police Department as the only defendant and alleged state-law claims for unlawful restraint and malicious prosecution. (*Id.* at 1). Service of process was made on the Police Department on May 29, 2024. (Dkt. 1-7, p. 2). On June 24, 2024, the City answered on behalf of the Police Department and filed a plea to the jurisdiction, seeking dismissal under the Texas Tort Claims Act. (Dkts. 1-3, 1-4).

On September 9, 2024, before the state court ruled on the City's plea to the jurisdiction, Drakos filed his first supplemental complaint.[3] (Dkt. 1-5). In this

---

[3] It appears from the state-court docket that Drakos filed a second amended complaint on July 15, 2024. (Dkt. 1-7, p. 2). He also filed various discovery requests, a response to the City's plea to the jurisdiction, a request for a hearing, and a "request for service." (*Id.* at 2-3). It does not appear that any action was taken on these pleadings before Drakos filed his first supplemental complaint.

supplemental complaint, Drakos renewed his claims against the individual defendants that he had previously dismissed in his amended complaint, and he alleged new claims under federal law against all the defendants. (*Id.*). In an accompanying letter, Drakos requested service of process on "the defendants" through the attorney who had appeared on behalf of the City. *See Drakos v. City of Meadows Place Police Dep't, et al.*, No. 24-DCV-313345 (240th Dist. Ct., Fort Bend County Sept. 9, 2024). He did not provide completed Request for Service forms to the District Clerk for any of the defendants. The Clerk issued a citation for service of process on the Police Department on September 19, 2024. *Id.* at Dkt. 43. The Clerk also advised Drakos by letter that no returns of service had been received for any defendant other than the Police Department. *Id.* The City answered the first supplemental complaint on September 25, 2024. *Id.* at Dkt. 44. The City then removed the action to federal court. *Id.* at Dkt. 45. (Dkt. 1).

In his first supplemental petition, Drakos asserts claims for false arrest, false imprisonment, "denial of access," cruel and unusual punishment, malicious prosecution, unlawful restraint, illegal search and seizure, and violation of his rights to equal protection, due process, and property. (Dkt. 1-5, pp. 3, 9). However, in his more definite statement, Drakos affirmatively withdraws his claims for "denial of access," cruel and unusual punishment, and violations of his equal protection rights and property rights." (Dkts. 17-1, p. 10; 17-2, p. 2-3). He also withdraws his claims

against the Police Department because it is a non-jural entity.  (Dkt. 17-2, p. 5).

As the pleadings stand before this Court, the following claims remain pending against the following defendants:

- Claims against the City for (1) violation of due process by failing to intervene in the criminal action against him despite knowing of its falsity; (2) violation of due process by denying him access to the Police Department records necessary for him to prove his innocence; (3) municipal liability based on a policy or custom of "negligent and reckless training" by training officers, and (4) negligent supervision and negligent training of police officers.

- Claim against the Mayor for violation of due process because the Mayor knew of the false charges and failed to intervene to stop the criminal action against him.

- Claim against the Police Commissioner for violation of due process because the Police Commissioner knew of the false charges and failed to intervene to stop the criminal action against him.

- Claims against the Police Chief for (1) violation of due process by conspiring to falsely arrest Drakos; (2) violation of due process by authorizing an illegal search and seizure; and (3) violation of due process by refusing Drakos access to Police Department records he needed to prove his innocence.

- Claims against Nix for (1) false arrest; (2) illegal search and seizure;

(3) violation of due process for filing a false offense report, and (4) malicious prosecution.

- Claims against Jackson for (1) false arrest; (2) illegal search and seizure; (3) violation of due process for filing a false offense report, and (4) malicious prosecution.

- Claims against John Does 1 and 2 and Jane Doe for illegal search and seizure.

(Dkts. 1-5, 17).

Once the case was removed to this Court, the City filed a motion for judgment on the pleadings. (Dkt. 8). The motion sought such a judgment on three grounds: (1) Drakos failed to allege sufficient facts against the City to establish municipal liability under federal law; (2) the Police Department is not an entity capable of being sued; and (3) Drakos's state-law claims against all the defendants are barred by the Texas Tort Claims Act. (*Id.*). Drakos responded with a motion for default judgment and/or summary judgment against all defendants. (Dkt. 9). Neither party has responded to the other parties' motion, and their time to do so has now expired.

## II.    **LEGAL PRINCIPLES**

### A.    **Actions Under 42 U.S.C. § 1983**

The City removed this action to this Court after Drakos alleged at least some claims under 42 U.S.C. § 1983. "Section 1983 does not create any substantive rights, but instead was designed to provide a remedy for violations of statutory and

constitutional rights." *Lafleur v. Texas Dep't of Health*, 126 F.3d 758, 759 (5th Cir. 1997) (per curiam); *see also Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). To state a valid claim under § 1983, the plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Gomez v Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam). The first element recognizes that "state tort claims are not actionable under federal law; a plaintiff under [§] 1983 must show deprivation of a federal right." *Nesmith v. Taylor,* 715 F.2d 194, 195 (5th Cir. 1983) (per curiam). The second element, which requires action "under color of state law," means that generally only *state* actors—not private parties—can be liable for violations of civil rights. *See Frazier v. Bd. of Tr. of Nw. Miss. Reg'l Med. Ctr.*, 765 F.2d 1278, 1283 (5th Cir. 1985).

### B.    The Prison Litigation Reform Act

Although Drakos has now been released from jail, he was incarcerated when he first filed this action. Therefore, his action is governed by the Prison Litigation Reform Act (PLRA). *See Gay v. Tex. Dep't of Corr., State Jail Div.*, 117 F.3d 240, 242 (5th Cir. 1997) (holding that the plaintiff's release from custody does not excuse his compliance with the PLRA). Under the PLRA, when a prisoner's complaint seeks relief from the government, the Court is required to screen the complaint as

9/28

soon as feasible after docketing. 28 U.S.C. § 1915A(a); *see also* 42 U.S.C. § 1997e(c) (providing for screening of suits by prisoners under § 1983). This screening requirement extends to prisoner cases that were originally filed in state court but which have been removed to federal court. *See Fleming v. United States,* 538 F. App'x 423, 424 (5th Cir. 2013) (per curiam); *Phillips v. City of Dallas*, No. 3:14-cv-3131-M, 2015 WL 233336, at *4 (N.D. Tex. Jan. 14, 2015) (same).

As part of the screening process, "the district court is authorized to dismiss a complaint if the action is frivolous, malicious, or fails to state a claim upon which relief may be granted." *Fleming*, 538 F. App'x at 425. A complaint is frivolous "if it lacks an arguable basis in law or fact." *Geiger v. Jowers,* 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Samford v. Dretke,* 562 F.3d 674, 678 (5th Cir. 2009) (per curiam); *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). "A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (cleaned up). A complaint fails to state a claim upon which relief can be granted if it does not contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)).  If the complaint does not meet these pleadings standards, it must be dismissed.  *See In re Jacobs*, 213 F.3d 289, 290 (5th Cir. 2000) (per curiam).  In addition, the Court may dismiss the complaint, or any portion of the complaint, if it "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(2).

### C.    Motions for Judgment on the Pleadings

The City has filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).  "A motion brought pursuant to [Rule] 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts."  *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)).  "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim."  *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).  Dismissal under Rule 12(b)(6), and *ergo* entry of a judgment on the pleadings, may be based on either (1) a lack of a cognizable legal theory, or (2) a cognizable legal theory that is not supported by sufficient facts to state a claim that is plausible on its face.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *see also Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011); *Frith v. Guardian Life Ins.*

*Co. of Am.*, 9 F. Supp. 2d 734, 737-38 (S.D. Tex. 1998). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (cleaned up).

In determining whether a judgment on the pleadings is proper, the Court accepts all the plaintiff's *factual* allegations as true. *See Garza*, 972 F.3d at 727. But the Court is not required to "accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678. The Court then determines whether the factual allegations, accepted as true, state an actionable claim for relief against each of the defendants. *See Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). If the plaintiff's complaint does not allege facts that state a cognizable claim that is plausible on its face, the motion for judgment on the pleadings should be granted. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

### D.    Pleadings Filed by *Pro Se* Litigants

Drakos is representing himself in this action. Courts construe pleadings filed by *pro se* litigants under a less stringent standard of review. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Under this standard, "[a] document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*,

429 U.S. 97, 106 (1976)).  But even under this liberal standard, *pro se* litigants must still "abide by the rules that govern the federal courts."  *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014).  They must "plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal."  *Id.* (cleaned up).

## III.  **DISCUSSION**

### A.  **The City's Motion for Judgment on the Pleadings**

The City contends that it is entitled to a judgment on the pleadings because the facts Drakos alleges, even accepted as true, do not establish liability against any of the defendants under any cognizable legal theory.  After a thorough review of the motion, the parties' pleadings, all matters of record, and the law, the Court grants the City's motion in part.

#### 1.  **Claims Against the City**

##### a.  **Claims Under Federal Law**

To the extent that Drakos has filed claims against the City under federal law, his avenues of relief are limited.  Under 42 U.S.C. § 1983, municipalities, such as the City, are not liable for the unconstitutional actions of their employees under the doctrine of *respondeat superior*. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Instead, a plaintiff seeking relief against a municipality, such as the

City, must establish that the allegedly unconstitutional conduct is "directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). In general, this requires the plaintiff to (1) identify an official policy, (2) that was promulgated by a municipal policymaker, and (3) that was the moving force behind the violation of a constitutional right. *See Henderson v. Harris County, Tex.,* 51 F.4th 125, 130 (5th Cir. 2022) (per curiam), *cert. denied*, 143 S. Ct. 2661 (2023).

To satisfy the first element, the plaintiff must clearly identify either an official policy or an unofficial "custom or practice" that caused the violation of his rights. The policies or practices that can support such a claim "include the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up); *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850–51 (5th Cir. 2009). To proceed beyond the pleading stage, the plaintiff's "description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997); *see also Peña v. City of Rio Grande City, Tex.*, 879 F.3d 613, 621-22 (5th Cir. 2018).

Moreover, when the plaintiff relies on an unadopted custom or practice rather than an official policy, the plaintiff must allege facts showing that the municipality

14/28

had actual or constructive knowledge of that custom or practice. *See Valle v. City of Houston,* 613 F.3d 536, 542 (5th Cir. 2010). This requires factual allegations showing that the actions of municipal employees "have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipal] employees." *Webster v. City of Houston,* 735 F.2d 838, 842 (5th Cir. 1984) (per curiam). Isolated incidents of unconstitutional conduct are not sufficient to meet this standard. *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995).

In his pleadings, Drakos does not identify any policy, ordinance, regulation, or decision that was officially adopted or promulgated by the City that caused the alleged violation of his rights, nor does he identify any common or well-settled practice that could be said to fairly represent a municipal policy. He does not allege facts showing that the City had either an official policy or a common practice concerning intervention in criminal proceedings, nor does he identify any basis under which the City could legally intervene in such proceedings. He does not allege facts showing that the City had either an official policy or a common practice of ignoring requests for documents, nor does he show that he legally requested these documents outside of his pending criminal proceedings.

As to his claim concerning negligent or reckless training, Drakos does not

15/28

identify any official policy or common practice concerning the training of police officers, and his bare allegation that the City "knows" that its police officers engage in improper actions and yet does nothing about, unsupported by any factual allegations in support, is conclusory and speculative.

Drakos also alleges no facts showing that the City had a pattern or practice of responding to similar alleged violations with deliberate indifference. Instead, he alleges facts showing only an isolated incident of the City failing to intervene in a pending criminal proceeding and failing to respond to his requests for documents. These isolated incidents of allegedly unconstitutional acts are insufficient to state a cognizable claim for relief because to "plausibly plead a practice so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622 (quoting *Connick*, 563 U.S. at 61). Drakos's factual allegations, even taken as true, are insufficient to state a claim against the City under § 1983 for violations of his due process rights.

Drakos also claims that the City has a policy and custom of "negligent and reckless training" designed to cover up unjustified arrests, unreasonable searches, and "other fourth amendment violations" and negligent supervision of police officers, but this claim is also flawed. Drakos alleges no facts showing a pattern of similar violations that would be sufficient to show that the City has essentially

16/28

ratified these actions into a custom. In addition, the City cannot be liable for an unwritten custom unless "[a]ctual or constructive knowledge of such custom" can be attributed to a city policymaker. *Peña*, 879 F.3d at 623 (quoting *Hicks–Fields v. Harris County, Tex.*, 860 F.3d 803, 808 (5th Cir. 2017)). Drakos's complaint contains no factual allegations showing that any particular policymaker—whether it be the Mayor, the Police Commissioner, or the Chief of Police—had any knowledge of the alleged negligent training that he claims resulted in the violation of his rights.

Drakos also alleges that the City should be held responsible for the alleged deliberate indifference of the Mayor, the Police Commissioner, and the Police Chief to his allegedly wrongful imprisonment. However, under *Monell*, the City can be held liable only for its own violations of Drakos's constitutional rights; it cannot be held vicariously liable for violations committed by its employees. *See Monell*, 436 U.S. at 691. And while a municipality can in some cases be liable for the deliberate indifference of municipal employees, to state such a claim, Drakos must allege facts showing that the City was aware of a "pattern of similar constitutional violations" but took no actions to remedy the problem. *Peña*, 879 F.3d at 623. As explained above, Drakos does not allege any facts tending to show that any similar incidents had occurred or that the City was aware of a pattern of similar incidents.

Drakos has not alleged sufficient facts in either his first supplemental complaint or his more definite statement to state a legally cognizable claim for

17/28

municipal liability against the City under § 1983. The City is entitled to judgment on the pleadings in its favor on Drakos's claims against it under federal law.

**b.**   **Claims Under State Law**

To the extent that Drakos's complaint can be construed as seeking relief against the City under state law, his claims are barred by governmental immunity.

A Texas municipality, such as the City, is immune from actions under Texas common law unless the Texas Legislature has expressly waived that city's governmental immunity. *See Univ. of Tex. Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex. 1994). The legislature has waived immunity only to the extent explicitly stated in the Texas Tort Claims Act (TTCA). *See Lowe v. Tex. Tech. Univ.,* 540 S.W.2d 297, 298-99 (Tex. 1976) (citing TEX. CIV. PRAC. & REM. CODE § 101.001–.109); *Harris Cnty. Sports & Convention Corp. v. Cuomo*, 604 S.W.3d 149, 153 (Tex. App.–Houston [14th Dist.] 2020, no pet.). Thus, the City is immune from Drakos's state-law claims unless the TTCA clearly waives that immunity. *See York,* 871 S.W.2d at 177; *Duhart v. State,* 610 S.W.2d 740, 742 (Tex. 1980).

In general, the TTCA waives immunity in only three areas: (1) use of publicly owned vehicles, (2) premises defect, and (3) conditions or use of tangible property. *See Mogayzel v. Tex. Dep't of Transp.*, 66 S.W.3d 459, 464 (Tex. App.—Fort Worth 2001, pet. denied). If the plaintiff's claims do not fall within one of these areas, the

municipality remains immune from both suit and liability. *Id.* In addition, the TTCA specifically provides that municipalities, like the City, are immune from suits arising out of intentional torts of their employees. *See Cox v. City of Fort Worth, Tex.*, 762 F. Supp. 2d 926, 935 (N.D. Tex. 2010). This includes claims arising out of "assault, battery, false imprisonment, or any other intentional tort." *Id.* (quoting TEX. CIV. PRAC. & REM. CODE § 101.057). Further, the TTCA prevents creative pleading by excluding "allegations against a governmental unit arising out of the same conduct that formed the basis of the intentional tort claims against its employee." *Goodman v. Harris County*, 571 F.3d 388, 394 (5th Cir. 2009); *see also Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001) (concluding that plaintiff's negligence claims arising from the same conduct that formed the basis of his assault and battery claims were barred by the TTCA).

Drakos's claims against the City for negligent supervision and negligent training of its police force do not fall within any of the three exceptions to immunity provided by the TCCA. And to the extent that Drakos seeks to hold the City liable based on his allegedly false arrest, false imprisonment, and malicious prosecution, these are all intentional torts for which the City is immune. *See Thomas v. State*, 294 F. Supp. 3d 576, 614 (N.D. Tex. 2018). Drakos therefore fails to state a legally cognizable claim against the City under state law. The City is entitled to judgment on the pleadings in its favor on Drakos's claims against it under state law.

Because Drakos has not stated a legally cognizable claim against the City under either federal law or state law, the City's motion for judgment on the pleadings is granted as to the claims against it. Drakos's claims against the City are dismissed with prejudice.

### 2.    Claims Against the Police Department

The City has moved for judgment on the pleadings on behalf of the Police Department, contending that it is not a jural entity that is capable of being sued. In his More Definite Statement, Drakos concedes that the Police Department is not an entity capable of being sued, and he states that he wishes to dismiss the Police Department as a defendant. (Dkt. 17-2, p. 5).

A party to a lawsuit must have the capacity to sue or be sued. *See* FED. R. CIV. P. 17(b). "The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is held.'" *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (quoting FED. R. CIV. P. 17(b) (1991)). Under Texas law, a municipal police department is not a separate legal entity capable of being sued. *Id.*; *see also Rolen v. City of Brownfield, Tex.*, 182 F. App'x 362, 363 (5th Cir. 2006) (per curiam) (the district court did not err in dismissing the claims against the City of Brownfield Police Department because it was not an entity capable of being sued); *Gardner v. Sugar Land Police Dep't*, Civil No. H-06-2559, 2006 WL 3171098, at *2 (S.D. Tex. Nov. 1, 2006) (the Fort Bend County Sheriff's

Office, like all Texas police departments and sheriff's offices, is not a legal entity capable of being sued).

As Drakos properly concedes, the Police Department lacks the legal capacity to be sued. The City's motion for judgment on the pleadings is granted, and Drakos's claims against the Police Department are dismissed with prejudice for failing to state a claim upon which relief can be granted.

### 3. Claims Against the Individual Defendants

#### a. Claims Under State Law

In addition to his claims against the City and the Police Department, Drakos names as defendants the Mayor of the City of Meadows Place, the Police Commissioner of the City of Meadows Place, the Police Chief of the City of Meadows Place, Sergeant Nix, Officer Jackson, and three other unidentified City police officers. To the extent that Drakos seeks relief against these individuals under state law, his claims are barred by the Texas election-of-remedies statute.

Under the election-of-remedies provision of the TTCA, a plaintiff must choose between suing a municipality and suing an employee of that municipality. *See* TEX. CIV. PRAC. & REM. CODE § 101.106; *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 462 (5th Cir. 2010). If the plaintiff chooses to sue the municipality, that "constitutes an irrevocable election" by him and "bars any suit or recovery by [him] against any individual employee of the governmental unit regarding the same subject

matter." TEX. CIV. PRAC. & REM. CODE § 101.106(a). "Although recognized as a harsh grant of immunity, [§ 101.106] serves the purpose of protecting government employees from individual liability for acts or omissions where a claim based upon the same facts is made against their employers." *Jackson v. Dallas Indep. Sch. Dist.*, No. 3:98-CV-1079-D, 1999 WL 58846, at *5 (N.D. Tex. Feb. 1, 1999) (cleaned up), *aff'd*, 232 F.3d 210 (5th Cir. 2000). The election-of-remedies provisions in § 101.106 cover all state tort claims, whether intentional or negligent, and whether brought under common law or the TTCA. *See Bustos*, 599 F.3d at 463–64.

Here, Drakos has alleged claims under the TTCA and state common law against City employees as well as against the City, regarding the same subject matter. By choosing to sue the City, Drakos made an irrevocable election of remedies and is barred from suing the Mayor, the Police Commissioner, the Chief of Police, Sergeant Nix, Officer Jackson, and the three Doe defendants regarding the same subject matter. Because the City has moved for a judgment on the pleadings on Drakos's state-law tort claims against these individual defendants, the state-law claims against them must be dismissed. *See* TEX. CIV. PRAC. & REM. CODE § 101.106(e). The City's motion for judgment on the pleadings is granted as to Drakos's state-law claims against the individual defendants, and those claims are dismissed with prejudice.

### b.    Claims Under Federal Law

While Drakos's state-law claims against the individual defendants are barred by the election-of-remedies provision of the TTCA, that statute does not apply claims arising under federal law. *See Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 415-16 (Tex. 2015). Therefore, the Court turns to the federal claims against the individual employees.

### i.    Official Capacity Claims

Even though Drakos's federal claims against the individual defendants do not fall directly under the TTCA, to the extent that he sues them in their official capacities under § 1983, his claims are nevertheless barred by governmental immunity.

When a government employee is sued in his or her official capacity, the employing entity is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity"). Drakos's claims for money damages against the individual defendants in their official capacities are therefore construed as claims against the City and are barred by governmental immunity as explained above. The City's motion for judgment on the pleadings as to these claims is granted, and these claims are dismissed with prejudice.

23/28

### ii.    **Individual Capacity Claims**

To the extent that Drakos sues the individual defendants in their individual capacities under § 1983, his claims are not barred by governmental immunity. However, these claims are subject to dismissal because the available records appear to show that Drakos has not served any of these defendants with process.

For a federal court to have jurisdiction over a case removed from state court, the state court must first have jurisdiction over the action and the defendants. *See Lambert Run Coal Co. v. Baltimore & Ohio R.R. Co.*, 258 U.S. 377, 382 (1922). Accordingly, only those defendants who were properly served with process under state law before the action was removed are properly before the federal court upon removal. *See Woodham v. Nw. Steel & Wire Co.*, 390 F.2d 27, 29-30 (5th Cir. 1968). "If the state court lacks jurisdiction of the subject-matter *or of the parties*, the federal court acquires none." *City of Clarksdale v. BellSouth Telecomms., Inc.*, 428 F.3d 206, 211 (5th Cir. 2005) (quoting *Lambert Run Coal Co.*, 258 U.S. at 382) (emphasis added).

In this case, the state-court docket does not show that Drakos ever properly requested service of process on the individual defendants. (Dkt. 1-7). It also does not show any return of service for any of the individual defendants. (*Id.*). If, as it appears, the individual defendants were not properly served with process before this action was removed, this Court has not acquired jurisdiction over them and may not

adjudicate Drakos's claims against them.

In his pleadings, Drakos seems to contend that service on the City through its counsel should be sufficient to establish service of process on the individual defendants, who are City employees. Thus, the critical question is whether the individual defendants were properly served under Texas law. *See, e.g., Thompson v. Deutsche Bank Nat'l Tr. Co.*, 775 F.3d 298, 303 (5th Cir. 2014). And under Texas law, service of process on an individual defendant requires the plaintiff to either deliver the summons and complaint to the defendant in person or mail it to the defendant by registered or certified mail. *See* TEX. R. CIV. P. 106(a). Service on the individual defendant's employer or the employer's counsel is not sufficient. Therefore, it does not appear that the individual defendants were properly served before this action was removed to this Court. In the absence of proper service, this Court never acquired jurisdiction over those defendants and so may not adjudicate Drakos's federal claims against them.

The City did not move for judgment on the pleadings on this basis; however, this Court has an independent obligation to determine its own jurisdiction even if the question is not raised by the parties. *See, e.g., In re Red Barn Motors, Inc.*, 794 F.3d 481, 483 (5th Cir. 2015) (per curiam). Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. *See* FED. R. CIV. P. 12(b)(2). And because it appears from the

25/28

pleadings before the Court that these defendants have never been served with process, it appears that Drakos's federal-law claims against the individual defendants must be dismissed for lack of jurisdiction.

However, because this issue was not raised by the City and because the Court does not have the complete record of all of the proceedings in the state court, the Court will provide Drakos with an opportunity to show that he has properly effected service of process on them under Texas law. Accordingly, the Court orders Drakos to show cause in writing within thirty (30) days from the date of this Order why his claims against the individual defendants should not be dismissed for lack of personal jurisdiction due to a lack of service of process. If Drakos does not timely respond to this Order, his claims against the individual defendants will be dismissed without further notice under Federal Rule of Civil Procedure 41(b).

## B.    Drakos's Motion for Default and/or Summary Judgment

Drakos has filed a motion for default judgment against all the defendants, asserting that he obtained service on all of them through service on their counsel but that they either have not answered the complaint or did not timely answer it. (Dkt. 9, pp. 6-7). This motion is denied.

As to the City, neither entry of default nor a default judgment is proper because neither may be entered after the defendant has filed an answer. *See* FED. R. CIV. P. 55(a) (providing that a default may be entered only when the defendant has

26/28

"failed to plead or otherwise defend"); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 277 (5th Cir. 1989) (the filing of any pleading is sufficient to constitute an appearance and should preclude entry of default for failure to appear and defend). Because the City responded to both Drakos's first amended complaint and his first supplemental complaint, he is not entitled to entry of default or a default judgment against them.

As to the individual defendants, a default judgment is improper because the record before the Court does not show that Drakos ever obtained proper service of process over them. *See Ponder v. Wersant*, Civil No. 4:17-cv-00537, 2017 WL 5904720, at *2 (S.D. Tex. Sept. 29, 2017) (entry of default is improper when proper service of process has not been obtained). As explained above, under Texas law, proper service of process on an individual defendant requires the plaintiff to either deliver the summons and complaint to the defendant in person or mail it to the defendant by registered or certified mail. *See* Tex. R. Civ. P. 106(a). Service on the individual defendant's employer or counsel is not sufficient. Accordingly, because Drakos does not show that he ever properly served any of the individual defendants, he is not entitled to entry of a default or default judgment against them.

## III.  **CONCLUSION**

Based on the foregoing, the Court **ORDERS** as follows:

1. The City's Motion for Judgment on the Pleadings, (Dkt. 8), is **GRANTED** in

27/28

part.

2. Drakos's claims against the City of Meadows Place, his claims the City of Meadows Place Police Department, his state-law claims against the individual defendants, and his federal-law claims against the individual defendants in their official capacities are **DISMISSED with prejudice.**

3. Drakos's federal-law claims against the individual defendants in their individual capacities remain pending at this time.

4. Drakos's Motion for Default and/or Summary Judgment, (Dkt. 9), is **DENIED.**

5. Drakos is **ORDERED** to show cause in writing **within thirty (30) days** of the date of this Order why his federal-law claims against the individual defendants should not be dismissed for lack of service of process.

6. Drakos's failure to file a response to the Order to Show Cause within the time allowed may result in the dismissal of this action under Federal Rule of Civil Procedure 41(b) without further notice.

The Clerk shall provide a copy of this Order to the parties.

SIGNED at Houston, Texas on _____Feb 18_____, 2025.


_____
DAVID HITTNER
UNITED STATES DISTRICT JUDGE